We will hear argument first this morning in Case 24-872, Ham v. Smith. Mr. O'Rourke. Mr. Chief Justice, and may it please the Court. Nothing in the Eighth Amendment bars the sentence Joseph Smith received for murdering Dirk Van Dam nearly 30 years ago. Atkins created an exception for offenders known to be intellectually disabled, but Smith is not. He didn't come close to proving an IQ of 70 or below with scores of 75, 74, 72, 78, and 74. But the lower courts changed the rules. First, Miss Reading Hall, they took the lowest score to represent a possibility that Smith's IQ is 69. Then, to the extent they considered other scores, they took each only in isolation and moved the line to 75. Second, these maneuvers expanded Atkins, and this Court should reverse that expansion. First, because it was not authorized by the Eighth Amendment. Second, because it would eliminate state discretion. And third, because it ignores that the combined effect of multiple IQ scores reduces error and yields a more accurate estimate. The answer to whether courts may consider the cumulative effect of multiple IQ scores is yes. The answer to how they handle multiple scores is not found in the Eighth Amendment and thus left to state discretion. Still, this Court can offer some meaningful ground rules for how to handle multiple scores. First, states are allowed to make the first prong turn on the very best evidence of intellectual functioning, IQ. Second, states are allowed to define the requisite intellectual functioning as an IQ of 70 or below. Third, states are allowed to require the claimant to prove his IQ by a preponderance of the evidence. The Court can then supply a durable rule of decision by which a state can adopt a reasonably reliable method for handling multiple IQ scores that when it suggests the offender's IQ is greater than 70, his sentence does not violate Atkins. Here, every identified method of handling multiple IQ scores favors the conclusion that Smith is not intellectually disabled. I welcome the Court's questions. How would you specifically handle the multiple scores here? In this case, the consistent evidence is that Smith's IQ is above 70, and we've offered five different ways to see that, but we think ultimately it's Smith's burden to come with a method that proves that his IQ is likely below 70. So is the test whether or not it is likely or is? Likely below 70 is our understanding of the preponderance burden in Alabama. Other states are free to adopt other burdens of proof. And what was the finding of the Court of Appeals and the District Court? The sentence, Smith's IQ is below 70, doesn't appear in the District Court's opinion nor in the Court of Appeals' opinion. They found the first prong satisfied by a preponderance of evidence, but only after they changed the standard to be not just intellectual functioning, not just IQ, but a broader conception of intellectual functioning. What if the scores were 69, 68, 69, 69, 75? I mean, would you concede in that case that the actual IQ is below 70, or would you still argue, well, 75 is above, so we've got to look at all sorts of other things? Well, the burden would still be on the offender to prove a likelihood that his IQ is 70 or below, and so he'd have to come with a method. He'd have to come with a what? With a method for assessing those scores. Here, Smith didn't, so his claim fails. We have an argument that the highest score should be given more probative weight because there are many ways that an IQ test can underestimate IQ, if the offender is distracted, fatigued, ill, or because of the incentive to avoid the death penalty. Well, it does say you can see why that might be regarded as a little results-oriented. When you have scores above 70, you want to average them and discount the one below, but when they're all below, you don't do that. You instead say you've got to look at all these other factors. It's not results-oriented, Your Honor, because there is a scientific warrant behind it, and we have to think about what IQ tests are doing. They're trying to measure the capacity for intellectual performance, and so someone's best score is the best representation of their test. But, Mr. Overing, it seems to me that you are actually changing the standard. You've accused the District Court and the Court of Appeals of doing so, but in our case law, consistently, we've said that the first prong relates to a showing of significant sub-average general intellectual functioning. The words IQ score under 70 does not appear. That's not the standard. I appreciate that that's one of the ways in which science has determined that you can make such a showing, but we also have allowed for evidence related to adaptive functioning to be taken into account when looking at intellectual functioning, so I think what you've done is shift this to be all about the IQ test in a way that is not supported by our case law. Atkins cited the fourth edition of the DSM, and I think the phrase that you just used appears in that edition, and then further defines what general intellectual functioning means, and it used to mean an IQ of 70 or below. Before that, it was 65. Now they're saying it's 75, but IQ has always been the primary criterion by which intellectual function... The primary, but not the sole, and we've never said it's been the sole, and what the District Court did here was look not only at the IQ scores holistically, but also other evidence of adaptive functioning, and that's precisely what our case law says that the courts are supposed to do. So let me ask you, why do you think that the test should be simply and solely IQ score cut off at 70? IQ is originally how intellectual disability was defined as a condition, and it's always been the primary criterion, and states are allowed to take the best evidence of intelligence and to make that the test. What do we do with the brief of the American Association of Intellectual and Developmental Disabilities, the actual experts in this area, who say, and I'm looking on page 24 here, other than requiring the careful use of clinical judgment and professional responsibility in performing a complete analysis, there can be no single mandatory empirical method for clinicians to use in considering multiple scores or in determining whether or not someone is intellectually disabled. They look at a lot of things. So reducing this to a single score seems to me misguided. Well, if there can be no one mandatory method, then it's up for states and their legislatures to decide. That brief also said on page 15 that IQ remains the best single representation of intellectual functioning. And the alternative is very unworkable. Courts do not have a means by which they can compare the evidence at prong two, for example, that he struggles with navigating the subway system or doesn't know how to cook certain dishes against the objective IQ evidence. I'm sorry. I'm having a really hard time with this case. Because I don't think you're wrong. States can define this the way they want. The problem here is not what the state of Alabama is doing. The Alabama state is doing what all courts are doing. You haven't pointed me to Perkins or any other court where the rule that you're proposing has been adopted by Alabama. When we get that case, we might answer your question. But in the abstract, I don't know how we can answer it here. You didn't argue this below. Your own expert did exactly what you say is wrong. So, your own expert said he had valid scores between 72 and 78. And he relied on all of the other indicia to determine that he believed this person wasn't intellectually disabled.   I'm sorry. Respondents experts concluded differently, and the district court credited respondents experts. But please point me to somewhere in the record in the district court where you made this argument. In 2015, the 11th Circuit, not the order before us, determined that the Alabama courts had erred unreasonably. Because they had done exactly what Hall told them they couldn't do. They looked at the three scores that were expanded at the time. And they said, I think it was 72 and 274 or something like that. It wasn't the 78. The 78 came later. And they said, on the basis of those scores alone, he wasn't intellectually disabled. And that's exactly what Hall, the year before, had said was wrong to do. So, we have to accept that the district court is now the finder of fact. And if the district court is the finder of fact, it can do exactly what you're saying. Follow Alabama law, and show me one case in Alabama that has followed your rule. Tell me where in the trial record you argued that somehow aggregating scores, that somehow medium scores, that somehow there was one perfect IQ score that states could require. Just show it to me. Point me to the record. Respectfully, Your Honor, at the start of your question, you asked, what is Alabama law? And I say Perkins says it's an IQ of 70 or below. And you implied that... But how do you prove that? And Alabama courts do exactly what the district court does here. It looks at the SEMs. That's what the court did here. It then decides whether the person is within the range of intellectual disability, which the court did here. The SEMs certainly are at least three out of the five are within disability. And then it looks to other things to determine whether the person is intellectually disabled. It's exactly what we told people to do in Hall. It's exactly what we told people to do in Moore. What you're asking us to do is to undo those cases. Because both in Hall and in Moore, there were various scores, just like in this case. In Hall, there were nine scores between... What were the figures? Nine scores between... I can't remember now. 71 and above. Not much. Even worse than here. Between 71 and 80. Here, there are five scores between 72 and one score of 78. And in Hall, only one of the lowest scores fell within SEM. And here, there were three. I'd like to clarify first Alabama law, because in your Honor's own description of what the state courts did in this case, they relied on the scores of 72, 74, and 75. And now they have Hall... Without looking at the SEM. And we, in Hall, the year before said, you have to look at the SEM. And they didn't. We cited multiple Alabama cases, Bush, Bird, and Kalin, all of which had similar scores to Smith's here. If you read every one of those cases, the courts there did exactly what this court did here. They looked at all of those scores, then they looked at the adaptive functioning to determine whether the person was actually at the lower end of the score or the higher end of the score. State courts have... Can you dispute that, that that's what those courts did? In some cases, the courts do look to other evidence, but they don't grant an Atkins claim based on that other evidence. There's not an Alabama case in which an offender was known to have an IQ above 70 and yet won his Atkins claim. And there's certainly not an Alabama case in which the courts plucked the lowest score alone and said that represents a possibility of intellectual deficits and moved on. That's my question, counsel. I wanted to know about the Alabama law, too. Could you just precisely explain... I don't want to delve into the record in this case, so my question is a little bit different from Justice Sotomayor's. I just want to know what is the Alabama rule? Because it seems to me that Justice Sotomayor is right that there are some Alabama cases that do move on to adaptive functioning. And so what about the other indicia and what role do they play in Alabama law? I think since Hall, courts have been confused in Alabama and nationwide about what some of the dicta in Hall means. With all due respect to this court, there are some confusing lines in Hall to interpret and apply in these cases with multiple scores, if Hall applies at all to cases with multiple scores. And so the Alabama courts are grappling with that, too, and they say, well, we looked at everything. We looked at the whole record, but there is not a case in which that other evidence has ever trumped IQ in Alabama. And what Alabama wants to do is best exemplified by its pre-Hall case law, such as Ex parte Smith, in which a 72 seriously undermined the Atkins claim. But I'm confused because it doesn't seem like Alabama prohibits the court from going on. So if a federal court is trying to figure out what the Alabama law is, wouldn't a federal court be justified, say, if we remanded it to the 11th Circuit, considering factors beyond the IQ scores? I think the best evidence of what Alabama law is is how the courts applied it in this case. I think at the end of the day, this court has to determine what is the federal constitutional minimum, what's the floor for Atkins claims. Counsel, with respect to Alabama and its law, whatever it may or may not be, can a federal habeas court grant relief without finding a violation of federal law or the federal constitution, in this case the Eighth Amendment? No. And that matters quite a lot. So what matters is, is he intellectually disabled? That's the federal law, right? The federal law is Atkins and Hall. Exactly. That you can't execute an intellectually disabled person. What is your understanding of the role of state law in making that determination, whether Atkins and Hall leave discretion to Alabama in defining what intellectually disabled is? That's my question. Obviously, it's an Eighth Amendment question, but what is the relationship between the Eighth Amendment and state law on this question? So Atkins, page 317, said that to the extent there's disagreements, the states have disagreements about who qualifies, who is, in fact, intellectually disabled. And so there's some suggestion in Smith's brief that the state's discretion extends only to procedural or evidentiary matters, but I read that paragraph in Atkins to mean that states actually have leeway as well in defining intellectual disability. And the definitions change. One reason states need discretion is that the line used to be 67. AAMR at one point put the line at 85. Now it's 70, or maybe it's 75 or somewhat above 75. And so states are not required to divine from these different psychiatric manuals what the best possible science could be when they're making a legal determination of intellectual disability. Let me posit this to you, that Atkins is trying to give states a little leeway because Atkins was a strong new holding from this court, applying new ground. It's trying to give states some leeway. But at the end of the day, a federal habeas court cannot grant relief on the basis of a violation of state law.  States can be more lenient, but that would not be a ground for federal habeas relief. You have to find that there is an actual Eighth Amendment violation in this case. Correct. Smith has an Atkins claim, not a Perkins claim. And Alabama is not more lenient than Atkins. Alabama is not more lenient than Hall. Alabama is trying to enforce the constitutional... It would be rather surprising to hear Alabama come in here and say we're more lenient...  ...than what the court is requiring us to do. Absolutely. It could happen, but it seems unlikely. Not in this case. And under Atkins, what do you think about... I'm sorry, my time's expired. No, please continue. You're asking about what the Eighth Amendment... What do we do with our precedents in this area? What if we said under Atkins, states can implement while one, however they want, because that's what Atkins says, as long as they don't treat a single score in the low 70s as decisive, Hall. And two, don't use extraneous facts to IQ scores to outweigh a low score more. I think that's correct with one caveat. It's not just a low score in the low 70s, but it has to be a score that has an error range, and that could be one standard error of measurement, according to the APA's brief in Hall on page 23, that includes 70 within its span. So that's how I would read Hall, but yes, those two rules are how we read the precedents. Thank you. Thank you, counsel. Justice Thomas? Justice Alito? No. Justice Sotomayor? You know, I don't see any state that defines intellectual disability this way. I certainly don't see, or to prove it this way, I don't see anything in Alabama's law that suggests it's following that rule. You're making something wholesale up, and you're claiming that there's disagreement in the lower courts. I don't see all that much disagreement. In Smith's table on page 17 of the appendix, he has cases from across all the states, and although you try to reap some confusion among them, they all seem to be following the method the district court here followed. And we announced a new rule. And so we've announced more confusion into an area where there's pretty standard procedures. They do exactly what the district court did here. I have no case that I have found, and I want you to find one state case that applies the rule as you've articulated it. Byrd v. State clearly states that the offender has the burden to prove by a preponderance of the evidence that his IQ is 70 or below. There is no dispute about that. Assume I take that as a given. We didn't grant cert on that because that really wasn't disputed anywhere. So where's the rest of what you're saying? Assume that states determine prong one based solely on IQ scores and some statistical unknown method of creating a medium composite score. There are different methods. Some states, some state courts have taken the average or the median, or they've simply said the scores are consistently above 70 and so it's the offender's burden to come back and overcome that with a statistical method. It's not Alabama's burden. Name one court that has held that. That it's up to the defendant to prove the first prong by a preponderance of the evidence with some statistical measure. It's not what I see. I have not found one state case that has required that. And now you're going to put in a new requirement that's actually even more complex than what states have been doing. Well, Hall itself said that evaluating multiple scores is a complicated endeavor. I am asking you for a simple answer. Name one state case that has made your prong one dependent on a statistical analysis of what somehow either an aggregated medium composite, I don't care what word you use, one state case that has required that. Well, I think courts haven't needed to go that far because offenders haven't come with a method. They haven't satisfied their burden in these cases. But they have granted relief to others without it. Not in Alabama. Sometimes the 11th Circuit will do that, applying this lowest score rule. And there is a division of authority. The 8th, 9th, and 11th Circuits look at the lowest score alone and say that it represents... They may well be wrong. And I think they probably... I haven't looked at those cases carefully enough to say whether they made error or whether you're characterizing them in a way that's not quite accurate, like here. The 11th Circuit made clear, as did the district court, that it wasn't relying on just the one low score. There were three scores that were within the SEM. Of 70. And below. Paul said that IQ is a measurement that has statistical properties, which we can evaluate. And that's why we take into account the standard error of measurement. The experts in this case are also telling us... So it's one case that has used required plaintiffs to come in with the statistical mathematical certainty of a particular number. Not certainty, but a preponderance of the evidence. Thank you, counsel. Your answer must be... Justice Kagan? Mr. Rovarin, I guess when I read Hall and Moore, I come away with a couple of things that are relevant here. And then a lot of space for a state court to do what it wishes, including with respect to multiple scores. But here are the two things that I take from Hall and Moore that are relevant here. The first is that in looking at any given score, you have to take into account the standard error of measurement, right? So that a 72 with a standard error of measurement of 5 becomes a 67 to a 77. And that's one thing that they said, right? You can't just treat it as above 70 because you have to recognize that SEM. I don't think you'd disagree with that. Except for the 5. Correct. Courts have to take into account standard error, but it's not always 5. Of course. I'm just using that as a hypothetical, all right? The second thing that it seems to me come out of those two cases is when you have a score, and most of these cases you're going to have, you know, almost all of them, you're going to have multiple scores. But when you have one score, because in both of these cases they just treated that low score as dipping below the 70 or a 70 or below, that that gives the defendant the opportunity to come forward with adaptive functioning evidence. It's just an opportunity to come forward with that evidence. Now, at that point, and this is true of a state that does the whole thing holistically. It's also true of a state that breaks it up into prongs. At that point, a court can decide how that evidence compares to all the other evidence in the case. And if it's a multiple score case where it's only one score that's dipping below 70, of course the court can say, you know, there are five other scores that are above 70, and we think that that's highly probative. So, you know, it's very nice that he had the chance to come in with adaptive evidence, but that's not going to play in our analysis because we look at all the scores and the scores alone do it for us. I think a court is definitely allowed to say that after Hall and Moore, as long as they've given a person the opportunity to come in with adaptive evidence. But they're also allowed to take into account that there are a lot of scores that suggest that the person is not intellectually disabled. So that's what it seems to me the law is coming out of these two cases. Do you agree with that or do you not agree with that? No, I don't agree with that because Hall didn't answer the question of what to do with multiple scores. And so if... It didn't. I mean, and because it didn't, that's why I say it really does leave a lot of discretion to a state court to decide how it wants to deal with the fact that there are a lot of scores on the plus 70 side and not a lot on the minus 70 side. That's totally within a state court's discretion to say there are a lot of scores here on the plus 70 side. That's dispositive for us. As long as they've given a person... This is the only requirement, it seems to me, that comes out of Hall and Moore. They have to give the person with the minus... with the 70 or minus score the opportunity to come in with adaptive evidence suggesting the opposite. That would be an extension of Hall, and we've said that Hall should not be extended. I would have thought that that's just what it says. If it's reasonable for a court to do that on a set of facts, then it should also be reasonable for a state legislature to say the true IQ line is 70, and that can be dispositive. So if a court could do that with scores of 72, 75, 76, why couldn't a legislature do the same thing and say, no, we don't want to leave that door open because we don't trust trial judges as well? Yeah, but I think that is the difference, right, that Hall and Moore did say you have to give the person the opportunity, you have to put it in front of the judge for the judge to say, you know, this is a case where I'm not convinced. You know, there are five scores, but they're all hovering around the 70 mark, you know, as compared to a case where there are five scores and most of them are nowhere near the 70 mark. So you have to give this person the opportunity, once you have that low score, to say maybe it's that low score that should be, that is more reflective of the person's intellectual function. There's more we can do with IQ, and the experts are coming in and agree with us that there are ways that you can combine the scores, and so the offenders at least got to do that and at least have to show a likelihood below 70. If there's a case where it's truly indeterminate, and that's what Hall seemed to think, that a score of 71 is so uncertain standing alone. If there were a case that's truly indeterminate, then perhaps there could be other evidence of intellectual functioning, not adaptive behavior, certainly. I don't think that they thought it was indeterminate standing alone. I mean, both Hall and Moore are multiple score cases, and both were perfectly aware that they were multiple score cases and talked, as you said, about the difficulties of dealing with multiple scores, so they knew that they were talking about multiple score cases. And the requirement that they set up is still if you have one score that brings you into the 70 minus range, that's enough so that you have to a little bit, you have to open the door to a person's evidence. Now, that's not to say you have to accept that evidence for a moment if there are a whole bunch of scores going the opposite way. We know what happens in these cases is that courts don't weigh the IQ evidence. They don't say, well, the IQ evidence is really strong for the state. Let me weigh that against his inability to buy car insurance or to maintain a bank account or something like that. They simply move on from IQ. And so once you open the door to this kind of balancing test, the second prong is really malleable, really amorphous, and we're picking up disparate facts about someone's life, self-reported or by biased reporters. And so that evidence is not disciplining the inquiry. It's not adding more rigor to figuring out what the intelligence is. And if it were, then the IQ specialists would simply make a better IQ test that accounts for things like that. Okay, thank you. Mrs. Gorsuch? Mrs. Kato? So what are the different permissible Eighth Amendment approaches a state can use when there are multiple scores? For example, in your reply brief, you articulate if the median is above 70. Is that...if the median's above 70, can the state say that's it? Yes. Okay. And you don't think Hall and Moore require more analysis in those cases? You think that's a safe harbor, so to speak? Yes. States can adopt reasonably reliable methods, and the APA handbook says that the median is option one. Okay. And if another approach you articulate is the overlap approach, the overlap among each score's error range, same question there. If the overlap... Well, you're a little bit ambiguous about what the overlap needs to be to give you certainty. You want to explain that? I know you think it's satisfied here, but what's the rule? So the idea is that when there's a cluster of scores that we can take into account each score's error range and then lay them on top of each other and see which numbers the error ranges have in common. So the intuition there is that maybe it's true IQ is somewhere in the middle. What if the bottom of the error range is 69 or 70 of the overlap error range? I don't think that's a problem for the state because the question is still the likelihood that his IQ is 70 or below. So simply having the number 69 in an error range, whether using the overlap or some other method, doesn't reflect a greater than 50% chance that his IQ is below 70. But in any event, in this case you say the bottom of the overlap is 73, I believe, correct? At least that's what you say in the reply brief. You say 73 to 77. And I think that should be a 78, but that's on the most generous assumption about the error range being plus or minus 5. And is the composite score method another method that the state can use? A state can use and, in your view, stop there? Yes, when it's available. And are there any other methods? The average is a rough approximation of the composite score. Well, there's a lot of skepticism about the average being accurate. Well, one of the authors of the APA's amicus brief in this case, Dr. Schneider, said that the average is a rough approximation of the composite score even if the composite score is the theoretically best method. States are allowed to adopt other methods. The fifth method would be to look at the high score when the highest score's entire error range is over 70. And those are the five that we've discussed as reasonably reliable methods. And why there? This picks up on the Chief Justice's question, but why are you picking just the highest score in that fifth approach? It seems, as he said, results-oriented. The highest score is more probative because there are many ways that an IQ score can err downward and very few ways that a score can err upward. And so, especially to take into account the obvious incentives to malinger in these cases, the lowest score should be viewed with greater suspicion. Oklahoma has adopted a rule like this and has withstood federal review for many years. And to follow up on Justice Kagan's question, what's the logic or the rationale or the sense behind not having a district court or a trial court or a state court have the ability in those circumstances to go on and look at more? Because I think what you are saying is each of those approaches are essentially a safe harbor. You win. The defendant can't meet his or her burden in those circumstances. You win. The state court can't go on and look at other things. That's, I think, what you're saying. What's the logic, the rationale, the sense behind that? Well, the adaptive behavior prong is simply not as good as IQ. And so once you start weighing that subjective and amorphous evidence against the objective evidence of IQ, we don't think it's within courts' capacities to do that well. Even if clinicians could somehow weigh the evidence of the ability to buy groceries against the IQ score of 78, I don't know how courts would do that. Adaptive behavior was added later. Originally, the diagnosis was just based on IQ. There's great disagreement among the experts about what adaptive behavior even means. Is it 10 or 11 domains or three different domains? And there's great disagreement about how to even measure it. There are hundreds of different scales, inventories, batteries for adaptive behavior. I think people have a misconception that these are just other standardized tests. But often it's not, and there's a lot of judgment that goes into picking them. So I'll just give one example in this case, a reading comprehension test. The courts below credited evidence that Mr. Smith is barely literate, I think, at Petition Appendix 22. And then he was administered a reading comprehension test that showed he reads at an 11th grade level, which is clearly inconsistent with intellectual disability. But the state courts focus on the evidence from grade school. They pluck out a different fact. And so this is not a really rigorous scientific test. The way that IQ is, the fruit of a multi-century enterprise to figure out the best possible estimate of intelligence. Thank you. Justice Barrett? Justice Jackson? So I guess I'm trying to understand the basis for our being able to determine that the district court in this case erred, which is what I understand you to be asking us to do. So are you saying that Alabama has selected any one of those five methods by legislation, for example, and the district court refused to apply it in its consideration? Alabama hasn't adopted one of those. All right. So you explored a number of possibilities with Justice Kavanaugh, none of which Alabama has actually adopted. So we can't say that the district court erred by not applying Alabama law in that sense. Did you ask the district court to apply any of those methods in its consideration of this defendant's intellectual disability? It's the petitioner's burden to come in. No, no, no. Your burden right now as petitioner is to establish that the district court erred. And so what I'm trying to ask you is whether you are saying that the district court erred by not evaluating this defendant in a way that he was never asked to do by the state below. Well, it's a legal error because my answers to Justice Kavanaugh were that those are all reasonably reliable methods that the state could adopt, and if that's true, then it doesn't matter whether Alabama has, in fact, adopted them in statute because there's no Eighth Amendment violation. That was my first question. Doesn't it matter for the purpose of our evaluation of the district court's error whether or not the district court was asked to evaluate this defendant using the method that you now say it was erroneous for the district court to not have used? I mean, this never came up. Like, no one said to the district court, please evaluate him using this method, and the district court said no. In that situation, we then assess whether the district court was wrong in refusing to adopt that method. We didn't get that far because we had five IQ scores that clearly show he loses, and then the district court focused only on the 72. And so the question... If the district court was weighing all of the evidence under the standard that it seems like your expert also agreed was the right legal test at the time, and now you're saying the test should have been different, the district court was only allowed to look at one of these other five reliable methods, although no one said to the district court at the time, please look at that method. We said to the district court, Alabama law is a true IQ of 70 or below by a preponderance, and then the district court did not apply that burden. Okay, let me ask you this, because I do think that there's something about party presentation here that's a little troublesome. A couple weeks ago, in a case called Clark v. Sweeney, we summarily reversed a grant of habeas because the court of appeals had granted habeas based on an argument that the petitioner had not presented. So I feel like you're actually asking us to violate that same principle. You never ask the court of appeals in this case, for example, to evaluate the district court on the basis of these five methods and say that it was erroneous on that basis or on the cumulative effects test. I'm a little confused all around because I thought the question presented in this case was about the cumulative effects test and that that's what you were actually advocating for, but that didn't come up in the lower courts. So how could we possibly reverse on the basis of these kinds of arguments that were not presented below? We absolutely did present evidence from Dr. King at JA 270 and 271 that his consistent scores were above 70. We didn't have to get to the level of granularity of specifying a particular method because there is no method in this case that can prove his IQ is likely 70 or below. We're offering those to answer the court's question how to assess multiple IQ scores, but it's sufficient to reverse. Your answer is not something about cumulative effects is what the court had to do and didn't do. I thought that was the test that you were requiring us to consider as the thing that the district court has to do. Our first argument is that it didn't do that because it looked only at the possibility, and if the court agrees it has to do that... Wait, I'm sorry. I thought you were saying the district court erred because it didn't consider the cumulative effect of multiple IQ scores and that the cumulative effect was a thing that the district court didn't do. All I'm asking here is, did you ask the district court to do that, or did you say to the court of appeals the district court has erred because it didn't look at the, quote, cumulative effect of the multiple IQ scores? Yes, we said that in the district court with Dr. King's testimony. Cumulative effect, I'll find it in the record because I didn't see the words cumulative effect in the record. Well, there are lots of synonyms, but consistent scores above 70, that's the same thing. And then the 11th Circuit, we presented this evidence and said the district court didn't take seriously the whole of the IQ evidence because it didn't even mention his score of 78, so it couldn't have done the cumulative effect. That's enough to reverse. If the court wants to go further and discuss the reasonably reliable methods, we think that would be a good idea, especially for guidance... So you're not asking necessarily for that rule about the reasonably reliable methods that certainly did not come up before? Well, that is the question presented, and so that would be a complete answer to Smith's claim is that there is no way that he can prove an IQ below 70 because even on these common and expert-approved methods, he hasn't shown that his IQ is below 70. Thank you. Thank you, Counsel. Mr. Brewer? Mr. Chief Justice, and may it please the Court, under Atkins, states have significant discretion in defining what it means to be intellectually disabled and what a defendant must do to prove it. Alabama has exercised that discretion to require that respondents show his true IQ is likely 70 or below based on all relevant evidence, including his multiple IQ scores all above 70. The courts below erred because they replaced that burden with some variant of a one-no score rule. Everyone now agrees that such a rule is wrong. Instead, respondents focuses on justifying the opinions below as applying a holistic analysis, but that misses the point. The problem here is not that the courts below simply looked at other evidence. It is that they measured that evidence against the wrong standard, and it's that they looked at that evidence on only one side of the scale, never considering the collective weight of respondents' multiple IQ scores taken together. I welcome the Court's questions. What exactly did Atkins say the Eighth Amendment violation was? I think Atkins laid down a general rule, which is that you cannot execute the intellectually disabled, and the meaning of intellectual disability is something that states define with significant discretion. What did Atkins say about determining what intellectual disability meant? I should use the word retardation. Sure. What did it say that was? I think that Atkins looked, and Chief Justice put this well in Moore, is that the scope of Atkins reaches no further than the consensus of the states. So I think that to the extent there's content to that command, it's going to come from state consensus. But I really do think that Atkins, largely, much as this Court has done in the insanity context, outsourced the definition of intellectual ability to the states. Counsel, I'd like to... You're focusing in on Atkins, but Hall and Moore say something very different than what you're saying. In Hall, Mr. Hall had scores between nine scores over 40 years. The lower courts found the scores 71 and 80, only two of the scores to be valid. But Florida had a strict cutoff rule that said anyone with higher than a 70 could not be intellectually disabled. So you can't have a flat rule that says you get one score over 70. You're not disabled, correct? Correct. I think that just... And what Atkins also said, I'm quoting, for professionals to diagnose and for the law then to determine whether an intelligence disability exists once an SMN applies and the individual's IQ scores is 75 or below, the inquiry would consider factors indicating whether the person had deficits in adaptive function. Courts must analyze the STEM, and if the STEM includes 70, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive functions. So for us to say what Petitioner wants would disavow that language in Hall. It would disavow nearly the identical language in Moore. In Moore, he had two valid scores of 74 and 78. Nowhere did we suggest that courts had to aggregate, accumulate, medium them out, composite them, do anything else with them. What we had, and there the court held that the state courts had violated Hall when it discounted the lower end of Moore's STEM because he was malingering. The tests were valid, he had a SEM, the SEM was below 70, and then the court held once the STEM in some of those valid tests were below 70s, courts, quote, must continue the inquiry and consider other evidence of intellectual disability, where an individual's IQ score adjusted for the test standard error falls within the clinically established range for intellectually functioning deficits. So you are asking us to tell courts below to do something substantially different than what we told them to do in Hall and Moore. Respectfully, no, Justice Kagan. There is a big difference between saying you can move on and look at other evidence and saying you can then forget about IQ entirely. That is something different. What you are talking about then is not a legal error by the courts below, you are talking about your difference of opinion. No, it is a legal error twice over, and I think it is  that the evidence on the other side of the scale weighs against the evidence on the other side of the scale. In this context, that is going to be the multiple consistent IQ scores together. That is what the three experts here did. There was Dr. King, I think one was Dr. Cuddy, who was the original expert, and then there was the evidentiary expert, Dr. Fabian, if I am not mistaken. Each one of them did exactly that. Your Dr. King looked at the scores and said, I am looking at the functioning, and I don't think he is on the lower end of 70, because when I speak to him, he speaks well, he can respond, I think he functions at a higher rate. The other doctors, which the district court credited, and did many, many more tests than Dr. King did, looked at all of the tests, all of the results, and said, I am convinced that his range is 70 and below. Before turning to the experts, let me just emphasize what I think are two discreet legal errors with the way in which the courts thought about this issue. The first one is, even if you tend to look at the secondary evidence, you still need to circle back. Are you saying it is wrong to do it? Wrong to do what? I don't think there is any per se rule in Alabama that says you cannot look at this. So the basic idea is, when you have all of this evidence together, are you measuring it against the right standard? So one legal error that happened below is that the court swapped essentially a preponderance burden with a possibility burden. But the other part is, even putting that to the side, the difficulty is that you still need to figure out what the ultimate question Alabama law is asking here, which is, is this other's evidence strong enough to drag down the collective weight of IQ below the line? You heard the question that I asked Mr. Haldeman, and I'm wondering if we disagree at all. If I say the thing that Hall and Moore require is that when you have a score that's 70 or below, you do have to give the defendant an opportunity to come in and to talk about adaptive functioning, but having given the defendant the opportunity to talk about adaptive functioning, yes, of course, you can go back to the scores and to the fact that there are a lot of scores on one side, the upper side of 70, that make you think that that evidence of adaptive functioning just cannot possibly carry the day. Is that what you're saying, or are you saying something more than that? I think I agree with 95%, or at least with one or two asterisks. Let me say how I think that cashed out here, and then what the constitutional rule is for how you just think about IQ. The issue is that what you were describing before just did not happen here. The only time that the courts grappled... Okay, so I take that point. Let's presume that I don't care about it for the moment. All I'm trying to do is to figure out the rule, and then we can go back and say whether the court did it or not do it. I think that the part where I disagreed with what you said before is just in the sense that a single low score in all circumstances, no matter what, will always preclude a state from being able to focus on IQ. Imagine, for instance... No, I don't think it would. The only thing that I think a single low score does is to say, yes, at that point, the defendant does have the opportunity to come in with adaptive evidence. I take whole and more to have that as their holding. I think I take it slightly less categorically than you do, which is just to say... Imagine a case of 10 85s and 172. The collective error range of those scores, even if you look at the 95% confidence interval, is not going to grace 70 or below. Imagine a situation like that where... I think you can structure it where the possibility remains low. That's like the hypothetical that you gave in your brief, like there are a lot in 90s. I kind of take that point, right? Because at some point, there's no clinician in the world who's going to say that just because you have one outlier score that there's a possibility. If you have like six 90s and a 72. But if you have something that's more along the lines of here, then I take it that we are in agreement, tell me if I'm not, that at that point, the whole and more ruling is you have to allow the person to come in with adaptive functioning evidence, but of course... May I, Mr. Chief Justice? Sure. But of course, you can say this is outweighed by the fact that there's a multitude of scores on one side. Yeah, I think that there is... And if I can just stress the two key points of agreement is that moving on doesn't mean you're done. It involves circling back to the standard that state law imposes. And I think in turn with that, it's helpful to clarify what I think is now a point of agreement that the one most score rule reading of whole and more, where prong one is satisfied substantively so long as you have one low score is wrong. Right. Yeah. Okay. Thank you, Counsel. Justice Thomas? Justice Alito? Let me see if I understand the colloquy you just had with Justice Kagan and the degree to which you agree with what she said. Did either whole or more hold anything with respect to how a case must be treated when there are multiple scores? Whole and more talk about one score and they say that dealing with multiple scores is a complicated matter. But do they say anything about how a court is to deal with a situation where there are more than one scores? No. Not expressly. So if there is a case with one score and the standard error of measurement has a range that is below 70 and that's it. That's all that's in the case. One score, standard error of measurement is below 70. Yes. Hall says that allows the prisoner to proceed with evidence about adaptive functions. But it doesn't say how the court is to deal with a situation where there are multiple scores. That's correct. This is what I was trying to get at before. I do think in a lot of the solutions that I think might come with concerns that come with looking at injecting adaptive functioning into this space, I do think states have some discretion about when you want to focus on IQ alone as a threshold matter. And I do think to the extent that a defendant just can't come in and show that your multiple scores have any realistic possibility of dipping below any concerning range, that is a time where a state can say we don't want to inject any of this other stuff into it, just focus on IQ. Okay. So what we are looking for here under our precedence is the evolving standard of decency that exists on this issue about how to decide whether someone who is sentenced to death has significantly sub-average intellectual functioning. In prior cases where we have tried to determine what the national consensus is, we have looked at state laws, things that are enacted by the state legislature on the theory that they reflect the moral judgment of the people of that state as expressed through their elected representatives. But what do we do with a situation, and let's say that if a state made the law through case law without thinking that it had to do something one way or the other because of our decisions about constitutional standards, put that aside, what do we do with a situation like we have here where state courts and lower federal courts are trying to figure out what we said and what all and more mean? And so their decisions reflect their interpretations, perhaps erroneous interpretations, of those two precedents of this court. Do we look at those to see whether there's a national consensus? No, I don't think so. I think there's a difference between the idea for a national consensus is when a certain moral judgment has the imprimatur of the people. I don't think that happens when a court imposes that standard on an incorrect understanding of federal law. So to the extent that this court is still doing head counting for purposes of eighth amendment, I don't think that courts misunderstanding all or more would factor in favor for whatever new rules being proposed. I don't know whether you've surveyed the state statutes, so perhaps you're not in a position to answer this question, but if one were to survey the statutes of all the states that have the death penalty and see whether they have adopted one approach or another approach to the situation we're dealing with here, what would we find? So I can't speak to the legislatures, just because I don't know what's motivating them. Alabama was able to catalog I think a few examples in their brief of instances where state courts were applying what is technically the one low score rule. That erroneous understanding of Hall and Moore, which again we all agree is an erroneous understanding of Hall and Moore, I don't think that that counts as a moral endorsement for the one low score rule. Justice Kavanaugh asked your friend about the advantages and disadvantages of the safe harbor as opposed to the alternative. And maybe I'd be interested in what you have to say about that. If there's a safe harbor in the sense that a person sentenced to death who's claiming intellectual disability has to meet some concrete standard before the case can go on, will there not be greater consistency and stability and is that not one of the lodestars of the court's death penalty jurisprudence as opposed to a situation where everything is up for grabs in every case and both sides can bring in experts to testify about the person's intellectual disability or lack of intellectual disability and every trier effect is going to decide that on an individualized basis. So I 100% agree with that, Justice Alito. And if I can just emphasize one point, because I don't think there's any practical daylight between what I'm saying and what Alabama was just talking about, I think the point I was making before is there might not be a per se legal bar on looking at the other evidence, but the IQ evidence may nonetheless be practically dispositive in a given case. So what I'm understanding essentially what my friend was saying is, well, if we look at the IQ scores, it was the defendant or respondent's burden to essentially show at step one that the error range of those scores together reaches 70 or below. Because even if that range never reaches 70 below in the first place, there's no realistic possibility that any of this secondary evidence on the other side of the scale is going to drag you over. So I think that that's more of a practical matter with the facts of this case where IQ happens to be dispositive just because there's not going to be anything on the other side of the scale that tips it over. Thank you. I'm not sure how that happens. There were nine scores in whole between 71 and 80. We still sent it back for the court to consider additional evidence, including adaptive functioning, correct? What Justice Alito was saying is states could do something like he suggests, but is that constitutionally required? I think the difference, though, is... Answer my question. Would states have to do it that way, or could they do it now in whatever way they thought? What are the five ways suggested by the other side or the way they're actually doing it? The answer is uncertain for the reasons I was explaining with Justice Kagan, and I can't, you know, I'm not good enough in math to do this on the fly, but the basic idea is that if those collective scores do not produce a range that even great... Has any state adapted that measure? Has any state approached the issue that way with multiple schools? I don't think so. Did Dr. King approach it that way below? In part, I think he focused on IQ and said that it did not fall below 70, and then also said that the other evidence on the other side of the ledger wasn't strong enough to show any other form of disability. What I thought he did was exactly what all the experts did, is three of the five fell within intellectual disability, and then he relied on the data functioning to say he thought he was not intellectually disabled. Let me make one quick point, just in addition to this, is that what you won't find in any of the expert reports is a conclusion with respect to what Alabama law asks. None of them found that respondent's true IQ was likely 70 or below. So finding that respondent did not satisfy his... I'm sorry, who didn't find that? No expert in this case. Wait a minute, that's what they did say. No, no, it's... Two of them, at least two of respondent's experts found he was intellectually disabled, that was the finding the district court made. It depends what definition you're using. The experts were using clinical definitions that are distinct from Alabama law. I don't disagree with you, but the district court was following Alabama law. These things are not statutory. Most of these, the very few, maybe Oklahoma is now, where one score above 76 disqualifies you. I don't know how that's not different than the 70, one score above 70 situation might be. But we'll look at Oklahoma when it comes to us. Sure. The only thing I'll add is that I don't think the district court was following Alabama law because as my friend emphasized, I think a very telling point is that you will not find a single sentence in anything the district court wrote that said respondent's IQ is likely 70 or below. We think that they were laboring... Oh, is that what you think they did wrong? I think that there's, what I was trying to get at at the start is there's two problems. They misunderstood the standard for a possibility idea from the one low score rule. That was only the 11th Circuit who said that. The district court certainly didn't say that. But then the basic part, too, is returning to what Alabama law is, which is a numerical inquiry. Does the evidence show that you've been able to drag down the IQ scores below 70? There's no engagement with that. But that was never argued by Alabama. Oh, no. It was one of their leading arguments, which was that you did not consider the totality of the evidence. And when you're trying to figure out whether the secondary evidence dragged the IQ down... All right. I'll stop. But that's attributing to one broad statement, a specific argument, that I don't see. Where did they say that the adaptive functioning should be ignored because the cumulative effect of the score showed he wasn't... It's two sides of the same coin. What it's saying is there's no need to move on to other stuff because here, Respondent hasn't even carried his initial burden of showing it will do any good. All right. Thank you. Thank you, Justice Kagan. Justice Gorsuch? A few questions there where I don't think you got to finish your answer. Here's your shot. I would be pretending if I remembered what any of those questions were. So, you know, I think instead of, you know, turning myself in a circle. If there's anything, you know, that you wish I spoke... No, there isn't. I want to get what your argument is. I'm here to understand it. Right. Not anything else. And I think one of the questions was what do you think the error was that the District Court made and that the 11th Circuit made? I think that was one question that I'd like to hear the answer to. Right. So I think there's two related errors. And the first is what we were saying before is that they just misunderstood what the substantive standard is. I'm going to look at this evidence. I'm going to ask whether there's a possibility. Alabama looks for a likelihood. So that's mistake number one. But the second part is even if you say it's applying the right standard, there's still a basic analytical error because once, if you look at the opinions below, once the courts consider multiple IQ and conclude that it's theoretically possible Respondent's IQ dips to 70 or below, IQ falls out of the case entirely. And that's a basic analytical error because, of course, not all possibilities are the same. A defendant with one score of 75 is going to have a really different burden than a defendant with 100 scores of 75. So the analysis here, what it should have looked like, is taking account of that dynamic, which is not just saying well, there's a possibility IQ falls away. I'm going to look at the secondary evidence. You then needed to circle back and see if that secondary evidence was strong enough to drag down the IQ scores below the line set by Alabama law. The first error, though, might be self-dispositive, it sounds like. Yeah, they're independent errors. Either one of which is sufficient. Correct. Okay. And you agree that at the end of the day, before a federal court can grant habeas relief, it has to find a violation of the Eighth Amendment here. Yes. If I had one piece to it, it's that You must. The wrinkle here, which I think is a bit difficult, is the innovation of Atkins, which is to... Innovation, that was the word I was looking for. Which is to identify a federal rule, a general rule against executing the intellectually disabled, but largely outsourcing its definition to state law. At bottom note, I agree with that. That's an innovation for sure. But it was trying to give some breathing room to states. There has to be a floor, an Eighth Amendment floor, beneath all that breathing room, right? Presumably. And before a federal habeas court can grant relief, I would have thought you have to find a violation of federal law. Yeah, I think that make of it what you will, but I think the formal way in which it would work is there's a violation of Atkins, federal, because one way or another, either met or did not meet. Whether or not you satisfied Atkins turns on whether you satisfied state law. Even if state law is well above the Eighth Amendment floor? Oh, I understand. And I think that the answer would be probably yes, although I think it's difficult. Really? Is it that difficult? Well, I think that states have broad discretion. I do think that at some point I will say, let me take that back just a little bit. States are free to be more protective than what the Eighth Amendment requires. How many times have we held that? 100%. So, for instance, what I meant to say is, imagine a state adopted the one low score rule as a matter of state law. Whether or not you violated that would not necessarily implicate the Eighth Amendment because it's more protective than what the Eighth Amendment would require. Exactly. And so, for a federal habeas cord to grant relief, you'd still have to go beyond that and find a violation of the Eighth Amendment. Yes. I'm glad we got to that. And then, what do you think about the holding that I suggested to your friend from Alabama, looking at what Hall and Moore and trying to figure out, because I agree there's some confusion, and that's why we took the case, QP, we did. Let's try to sort some of that out. But under ADKIN, states can implement the first prong however they want as long as they don't treat a single low score, a single score in the low 70s as decisive Hall. Or use facts extraneous to IQ scores to outweigh a low score Moore. Is that a correct and fair summary of the law that would provide guidance do you think? 100%. On the constitutional floor that you were just exploring, I want to ask the questions to you that I was exploring with Alabama's counsel. If the median is above 70, I understood them to say that the defendant cannot make out a successful Eighth Amendment claim, even if they might have something under state law. Do you agree with that? I don't think that the Eighth Amendment necessarily speaks to that one way or another. So you don't agree with that then? I think that the standards, what the Eighth Amendment is, at least under ADKIN, the Eighth Amendment strictures are only going to reach as far as a nationwide consensus mandate. So when it comes to those specific issues, to the extent there's no nationwide consensus on the question, no, I don't think you brought it up. So what happens when the median is above 70? I assume you're going to have the same answer on the overlap as well. So the overlap approach, let's say, as here, 73 to 77, they're saying when that's the case, you cannot make out a successful Eighth Amendment claim, period. Do you agree with them on that? I agree that it's practically dispositive. You said that. I wrote that down, practically dispositive. What does practically as opposed to legally dispositive mean? Because I think that it's not to say that there's some oversight legal error to moving on to other evidence. The other evidence then, when you move on, if you're saying they can move on or over the state's objection, you're saying the other evidence in some circumstances could outweigh the scores, even when the median's above 70. Let me finish. Or when the range is something like 73 to 77, in those circumstances, unlike the state, you're saying the other evidence could outweigh in some cases? I'm not saying it could outweigh. I think there's a difference between a constitutional rule as to whether or not you need to consider it. But I think in a circumstance where you have consistent scores that are in the high 70s, this is what I mean by practically dispositive. Well, if you're saying that you could consider it, but it's not dispositive, like the state says, then I'm trying — is this just for going through the motions or what — But I think this is a product of — again, this is going to be a product of state experimentation. If you have a totality of the circumstances inquiry in some measure, it doesn't mean all the evidence is equally important. So even if you decide to look at other evidence for one reason or another, the IQ scores might be so strong that there's no realistic possibility that other evidence is going to drag the IQ scores down. I'll ask it again. If the median's above 70, the court — the state says end there, you're saying no, you can go on to consider the other evidence. The defendant can have you go on to consider the other evidence. In some cases, can the other evidence outweigh the scores even when the median is above 70? So, yeah, I can imagine a circumstance hypothetically where — That's a yes. That's — okay, that's different from the state. Again, I think that — you know, so imagine a circumstance where you have two scores of 71, and then you come in and essentially you have an expert say, well, the content of those IQ exams tested A, B, and C aspects of intellectual functioning. I have all of these, you know, neuropsychological batteries that test other aspects of intellectual functioning, and they're really, really low. I could imagine that being, you know, in a state that has decided to adopt totality of the circumstances inquiry. That would be a kind of circumstance where, yes, the other evidence could put you below the line. So I think it would be constitutional error, then, for a court to say the median is above — is 73, that's the end of a you-can't-prevail-on-an-Eighth- Grade, that would be constitutional error. I would be — so I think that I would be reluctant to phrase this in terms of median, composite, whatever it might be, and this is what I was trying to get at a little bit with Justice Kagan, is that there is some point in Hall, I think, blesses this practice. There's some point where the possibility of your scores dipping below — dipping to 70 or below is remote enough that you can rely on IQ exclusively. I don't think this court's precedence paints with the bright line. It certainly doesn't mandate at this point a specific median number, but I think that's the nature of the inquiry. But that's where you differ from the state. The state really was pretty definitive on that, and you're not, which is fine. I'm just trying to explore, because we're going to have to dig through a lot in this case to explore. Right. I'll let — but again, this is, you know, returning to the part of — is it a real-world matter? I don't think it's going to make any difference here with the idea of — Here, meaning in this case. Correct. Okay. That's all I need. Thank you. Justice Barrett? Mr. Graber, I just want to clarify. It seemed to me that what you were telling Justice Kavanaugh might have been different than what you said to Justice Gorsuch, and I want to make sure that I didn't misunderstand that. When Justice Gorsuch read you his proposed rule statement, it didn't include anything about necessarily having to consider the evidence of adaptive functioning, but I understood you to tell Justice Kavanaugh that you would have to go on to consider such evidence, and that in some circumstances, it could outweigh the IQ scores, even if they were in, say, the, you know, 73 to 78 range. Is there a difference, or am I misunderstanding? I think a little bit. The part that I would want to focus on is the adaptive functioning piece, is that there's some aspect, I think, as we were getting at, there's some rule of Hall, taking Hall at face value, that at some point, IQ scores alone can't be the only thing you're looking at. I do think states have some discretion after that to structure what the other evidence is, and I would imagine that a rule that, for instance, focuses just on conventional evidence of intellectual functioning would be constitutional. The way in which that, if a state imposed that substantive standard, the question that would follow is, well, are Hall's references to adaptive functioning that dicta itself? Is that something this Court wants to give the force of law, that you need to consider this bucket of evidence in particular? I don't see any constitutional mandate to do that, but I think the only point is, is that so long as your scores touch a certain level, perhaps IQ can't be the only thing you're considering at Prong 1. Okay. Justice Jackson? I have to say, I think that the arguments and assertions in this case are all over the map and very hard to follow, so I'm trying, trying to understand how and to what extent the district court erred in this case, given the law as it existed at the time the district court ruled, as opposed to the law that Alabama wishes it had enacted or the cases that it wishes they had already put into place with respect to standards that it's coming up with now. So I understood you to say that there were two errors, something about likelihood or possibility versus possibility, and the second is the one I'm most focused on, which is that under Alabama law, you understand that the law is, and was at the time of the district court, that if you're looking at secondary evidence, was the secondary evidence strong enough to drag down what you had gleaned previously from the IQ scores? Is that what you understood Alabama law to be and therefore it was an error for the district court not to apply it? Yeah, and I don't think it's an IQ-specific insight. I think it's just a common sense point about the nature of how preponderance works. I just want to know if it existed as a standard so that we could say the district court erred. Yeah, I think that when you need to show that a fact is more likely than not in light of the totality of the evidence, you can't then exclude the most probative evidence as part of that weighing. So the issue here that the district court did is it said that the IQ scores allowed it to move on to other evidence, but then it forgot about the first half of the scale. It never looked at the collective weight of the IQ scores all above 50. But it did entertain expert testimony, and this is the second part of my question to you, is I'm trying to understand, there is a nub of this that's a question of fact, right? Is this person intellectually disabled? And I don't take it that you disagree that experts are going to be involved somehow in making this assessment, right? They're not only testing, but they're also looking at other evidence to the extent courts allow them to. So what I understood happened in this case is we had a series of experts come in, evaluate not only the test scores, but also the other evidence, and testify as to whether or not they thought this person had an intellectual disability. Now, I appreciate that the state's experts said no, but the other experts said yes. And the court looked at that and made a decision. I don't understand why that's error from the court's perspective when we ordinarily allow for hearings with evidence and testimony that goes to issues of fact, and the court decides. Right. So I wouldn't think about this as a battle of the experts' cases. But why not? We had experts who testified to this issue. That's the part where I disagree with you. No expert testified to whether or not respondents satisfied his burden at prong one as understood by Alabama law. All of the evidence about intellectual functioning was measured against clinical definitions that are different in kind from what Alabama asks. So again, the experts offered in their insights were different. Can you point to a case in which Alabama says experts, you can only testify for the purpose of our law to the standard as we are now articulating it. Because to the extent that Alabama sat there and heard the experts testifying and didn't object on the basis that you're saying or didn't argue to the district court there's a problem with this testimony because he's testifying to things that Alabama law doesn't consider, I think you may have waived this. I think this is the basic point is that it's not an all or nothing inquiry either way. I'm just trying to understand what was argued below. If you're now saying the problem with the testimony before the district court of the experts is that it wasn't focused in the way that Alabama law requires, where's the objection from Alabama below saying that? The fact that it doesn't answer the entire legal analysis or legal question before the district court does not mean the expert testimony is not relevant. But the district court then needs to take that evidence, put it into the equation as well. So what I mean by that is that it is true that the expert said, well, the secondary evidence has a bit of a downward pull. But that is... The expert did say that. But that is the start, not the end of the analysis. And that's the key problem with the district court is that it never looked back to see the weight of the thing that it is pulling. Because essentially what it said is this downward pull is dispositive. It never returned to the collective weight of the IQ scores as part of that analysis. Thank you. Thank you, counsel. Mr. Waxman? Mr. Chief Justice, and may it please the court, just to clarify one thing, the statutory standard in Alabama for prong one is substantially subaverage intellectual functioning. Now, courts sometimes use the term, and properly so, true IQ of 70 or below. But every court in Alabama, and this court, and every other court in every other state that I am aware of, understands that raw observed test scores is not the definition of true IQ. Now, in deciding whether a defendant has carried his burden to prove that he suffers from substantially subaverage intellectual functioning, Alabama law, like that of nearly all other states, all other states with the qualified sometimes exception of Oklahoma, requires courts to evaluate all proven evidence as to intellectual functioning offered by either side. That includes evidence of intellectual functioning other than IQ test scores, at least where a court, considering expert testimony, concludes that those scores alone don't decide the issue. The courts below did exactly that by evaluating evidence of Smith's significant impairment on other neuropsychological tests of intelligence. This is pages 88 and 90 to 92 of the petition   in the appendix, his grade school records, which showed that on every measure, he was two to four years below grade average, culminating in a diagnosis of mental retardation in the seventh grade. The, sorry, the warden and the solicitor general ask you to reverse the lower court's faithful application of Alabama law, and I am holding all 12 decided, reported cases on this issue post-hall in Alabama, and there is not a single case, including the two that my friend mentioned, in which the court said, we're only going to look at the test scores, we are not going to consider other evidence. In Perkins itself, which is the lead Supreme Court case, I'm sorry. Thank you. Before you go on to the, another granular argument, what is precisely, to your understanding, is Alabama law? Alabama law. Is this the pure law, not this case? What does it require? Alabama law requires that in evaluating whether an individual is intellectually disabled, three prongs must be met, substantially sub-average intellectual functioning, substantially sub-average adaptive functioning, and onset before the age of 18, and the Alabama Supreme Court in Smith v. State specifically said, and subsequently repeated, that the Alabama legislature has adopted the most liberal definition of intellectual disability for purposes of the Eighth Amendment. Excuse me, but do you agree that compliance with Alabama law would be compliance with the Eighth Amendment? In this instance, yes. I could imagine a situation in which, you know, Alabama said, we're just never going to execute anybody who has a score. Well, let me just put it a different way. Do you think that the statement, or in theory, the pure Alabama law, not an application here, is enough to comply with the Eighth Amendment? In this instance, given the way that Alabama has defined intellectual disability, yes. In other words, to go to Justice  friends earlier, of course a federal court, and here a court is not sitting, this is not a post-conviction, you know, AEDPA-type review. The trial court never held this hearing and heard this evidence. It is certainly true that a federal court cannot reverse a state sentence unless it violates the Constitution. That is exactly what both lower courts held, and that has got to be the case because, as Atkins explains, federal constitutional law in this area incorporates state law. Do you think the Eighth Amendment means something different in Alabama, could mean something different in Alabama than it means in, let's say, Florida or Texas? No. I mean, I think, I will, may I just add one second? Yes, sure. As we pointed out in our brief in the appendix, and I'm happy to answer any questions about any particulars, there is no state, every state that has considered multiple test scores post-haul, and it may also be true pre-haul, I don't know, with the limited exception of Oklahoma, and Oklahoma only when there's one score above 76, has said if there are multiple scores whose SEM ranges individually reach 70 or below, you consider other evidence that is relevant to intellectual functioning. That is a consensus. If the Eighth Amendment has to mean the same thing in every state, then there is the conundrum of Hall's, I'm sorry, of Atkins' reference to the discretion that is afforded to the states, and one possible interpretation of that seems to be the one that you are advocating, which is that federal law somehow incorporates state law, so that in determining whether there's an Eighth Amendment violation, the court is to determine whether there was a violation of state law. But isn't it another possible interpretation of that, the following, that the Eighth Amendment, as understood in Atkins, gives the states discretion, but there is an Eighth Amendment floor, and the Eighth Amendment floor is what cannot be, you can't go below the Eighth Amendment floor. And the floor is whatever a definition of intellectual disability, procedures for determining intellectual disability that are impermissible. And so long as the state does not go below that floor, state court does not go below that floor, there's no Eighth Amendment violation. I'm not sure, it seems to me, so long as the state court does not apply the quote, means to enforce this constitutional rule, which is the language of Atkins, in a way that is inconsistent with the Atkins principle, that persons whom a court, interpreting court law that itself is applying the Eighth Amendment standard, considers to be satisfying of all three prongs, in all three prongs. So I take that as an agreement, that it would be possible for a state to come up with procedures that would violate the Eighth Amendment, right? I mean, you wouldn't want to rule that possibility out. Oh, of course. I mean, that was exactly what happened in Hall. And in Moore, for that matter, and in Brumfield, and in every single one of those cases, the court remanded to the state courts, which then heard all of the relevant evidence, not just IQ test scores, all of the relevant evidence, and concluded that the defendant had, in fact, satisfied his burden to show all three prongs. Mr. Wexman, if a state law goes above what we might say the Eighth Amendment floor is, and a federal habeas court deviates from what state law requires, does it violate the Eighth Amendment? No. I mean, the example would be, let's say a state said, look, we've read all the other cases, but in our state, we're not going to execute anybody who has a true IQ below 80. And we're going to hear all the evidence, but a true IQ below 80, you win under state law. A federal court couldn't say — Couldn't grant habeas in that circumstance. Right. Unless there was a compelling argument that the true IQ was below 70. Right. But it might be a violation of state law, but it isn't a violation of the federal constitution. That's right. But what we have here is a situation in which every state, with the limited, very limited exception of Oklahoma, says IQ test scores are not the same as — are not equivalent to substantially subaverage intellectual functioning because that is a condition, not a test score. They are highly probative, considering the standard error of measurement of what actual IQ is. So we don't have to really consider Alabama law, because what you're articulating is the Eighth Amendment standard, as you see it, based on what you're pointing to in the consensus of the states. But just to kind of clarify the position on this thing we've been going back and forth with about what is the role of state law, really Alabama law here does not matter to your argument. Alabama law matters a great deal to my argument because, as this court has taught, we leave it to the states to apply appropriate means for enforcing the Eighth Amendment guarantee. And that is what the Alabama appellate courts have said repeatedly that they are doing in considering both evidence of IQ test scores, if there are any, and where those scores are determined upon expert testimony to be inconclusive, other evidence of intellectual functioning, including, in this case, four other psychometric tests that test intellectual functioning, and a history where in the seventh grade he was diagnosed, medically diagnosed, as mentally retarded. And considering all those factors, the court found, both the district court and the court of appeals made clear on remand, that with respect to evidence of intellectual functioning, including but not limited to test scores, he satisfied prong one. The court of appeals then went on to say, in its opinion on remand for this court, that the additional evidence, I'm quoting from page 8A of the joint appendix, which is quoting from Hall, the additional evidence of Smith's adaptive deficiencies plausibly supports the district court's reading that although Smith scored above 80, 70 in IQ tests, his actual functioning is comparable to that of individuals with a lower score. Putting aside how it applies in this case, the SG's methodological approach, as I understood it, I want to make sure whether you agree or disagree with it, what I understood the Solicitor General to say is that the scores, start with the scores, but then you have to go on, usually, maybe always, to consider all the other evidence, but then when you make the final evaluation, you can't forget about the scores as part of the overall analysis. That is, I agree 100% with that, and the district court did nothing of the sort. Right. On that latter part, I know you disagree, but on the methodology, anything you disagree with the Solicitor General on? My memory is even worse. I'll push it a little further. I mean, it's possible that the place you do disagree is, I think that the Solicitor General had an exception for scores that were, this is his, in the brief, the, you know, many 90 scores, and he said, you know, the scores can be such that you wouldn't have to. I think he had that exception, that caveat. I agree with that. I mean, you can take an example, for example, of somebody, I'm not sure if I've exactly got his hypo right, but let's say 490s and 171. Right. The court would certainly hear expert testimony on that. There may very well be expert testimony, maybe even agreement, that the 71 is, in fact, the result of malingering, or that it is a statistical outlier, and taking into account other evidence relevant to intellectual functioning should be disregarded. But I think a constitutional, a state court that said, come on, the guy has 490s and 171, and I've heard expert testimony on both sides, and I find, on the basis of that, that the defendant has not satisfied his burden of proving by a preponderance. What we have here are four and five  On that hypothetical, if I may just finish my sentence. Yes. Sure. What we have here are two experts who said four of the five scores are within the range of intellectual disability. The district court itself specifically found that, and so we're not in that hypothetical range. But I agree with the solicitor general. On that hypothetical, three or four sentences later. On that hypothetical. I couldn't contain myself. I know. I apologize.  Would it be permissible for a district court to say, you've got 490s and 171. That's enough. That's enough what? That's enough to show substantially substantial substandard, significantly substandard. It could do that. In that situation. I mean, the review is for clear error. And unless there were some compelling testimony to discount the 490s, it would be clear. There's no situation in which IQ scores could in and of themselves be sufficient. So the court could say, look, I've looked at these IQ scores and that's enough. The statistical possibility that the true IQ is below 70 is so small that the defendant can't possibly prevail. I mean, the court always has to hear additional evidence about adaptive functioning. I don't think that's the case. And in fact. I thought you said just the opposite. Is that not right? You said the court in that case would not have to look at adaptive functioning evidence. Right. I mean, there's going to be expert testimony pro and con with respect to the administration of these tests. And if the court hears the expert testimony and says that on balance I credit the expert who says that the 71 was a result of malingering or that the 71 is an outlier or that the 71 tested as my friend the solicitor general's assistant says tested certain aspects of intellectual functioning but not others that are really important and it should be discounted, a district court that credited that testimony would not err under the Eighth Amendment. So long as it was consistent with state law. What you say in your brief is that there is near unanimous consensus of the states that multiple IQ scores must be assessed holistically in light of all relevant evidence. That's correct. And so if there are multiple IQ scores there are five 100s and one 71. You still, the court can't just say the defendant has not, cannot prove that he's intellectually disabled. The court would have to hear additional evidence. The court would certainly have to hear expert testimony about the reliability of the, what are we up to now, five hundreds? But a court would certainly be within its rights to say there is no other evidence of intellectual functioning that could reasonably convince me that this man who doesn't fall remotely within the borderline, even taking the most generous standard error of measurement, and I'm ending my inquiry there. You would have to be able to show evidence on one side or the other that the test scores are in fact properly, were properly administered and reliably interpreted. And there are Alabama cases in which the state has offered extraneous evidence, that is evidence other than test scores that go to intellectual functioning, to say even though he scored within the range of 69 he's not intellectually disabled. And so I think your arguments or your arguments are all really heavily focused on the fact that what the court is actually doing is hearing evidence. That the court is actually assessing, making this determination about intellectual functioning in light of expert testimony about these things. And so it seems kind of odd to have rules that would be rigid with respect to how these particular experts are testifying or what the impact of the various scores are in this environment, I think. I mean, am I right about, like, part of the confusion that I'm having is that the, you know, Alabama and the SG seem to want to remove the evidentiary aspect of this and make it into just a question of law as though the court without evidence is just making this decision. When in fact the court is hearing from the district court at the test scores and all of the evidence and are testifying as to their beliefs regarding this particular legal criteria. And then the court is deciding. Let me make two points in response to that, Justice Jackson. First of all, it's too late and irrelevant for me to pick sides in Moore versus Texas. But what the district court did in this case is precisely what the chief justice in dissent said was properly done in Texas. A court hears the evidence, all probative, relevant and admissible evidence on both sides and makes a determination against the standard, the Eighth Amendment standard, with whatever procedural or substantive applications that state law provides. And in this particular case, what I understand the state to be saying is, look, as a matter of Alabama law, whether you're talking about the overlap or the average or the median or whatever, if you don't have an actual score at 70, you don't get to it is error, clear error for the court to hear other evidence that is probative of intellectual function including other psychometric tests that test intelligence as well as adaptive functioning and the fact that the guy was diagnosed as mentally retarded in the seventh grade. Of course a court should be able to determine that. There is just no warrant for this court to announce a constitutional rule binding on all states that precludes consideration of evidence that Alabama and the other states and state law properly considers probative of intellectual functioning. I think that would be setting a floor for all states, not binding the states. The states could always go above the floor, but in any event, I understood Alabama and the Solicitor General had different views on that, and that Alabama has that view that you just said, that if the scores, the median or the overlap is above 70, then that's it. You can't make out a successful Eighth Amendment claim. I understood the Solicitor General would say, no, you still go on and consider the other evidence, but don't forget about the scores. I gather methodologically you agree with the Solicitor General, you think Alabama is wrong on that. I think it's not really a question, but you can say yes or no to that. Yes, because, number one, there is no evidence in the Alabama case, and there was no evidence in this case with respect to whatsoever applying some aggregate score as the test for true IQ. Absolutely not. Now, median, you know, I'm sorry. You can have one sentence. I will reserve my one sentence to answer your question. I apologize. Mr. Graver doesn't get a chance to stand up and tell me whether I'm wrong about my summary of this, but then I think he would say, okay, you agree on that, but he says that the court here made two fundamental errors. One is it treated the preponderance standard as a possibility standard, and the second is it thought that it was not permissible for it to get back around to the scores. And he says those were the two errors. Were they? Is that right, Mr. Graver? No, I think that the district court's opinion refutes both of those contentions. The district court plainly and expressly found by a preponderance of the evidence that he satisfied prongs one, two, and three independently. I don't even remember what the second part is, but that would be something. No, the second part is important because Mr. Graver says that the court thought that it couldn't get back around and say, look, there are five scores here. Most of them don't reach the 70 threshold, that sort of thing. I mean, the district court opinion will speak for itself. The court said that he'd show — the court's opinion discusses each test score. It discusses each of the four experts'  It discusses what the experts showed about the other psychometric intelligence tests, about his history, and what each expert said about that, and then concluded, applying Alabama's standard of substantially significant — substantially subaverage intellectual functioning, that he, by a preponderance, he had met that standard. When you talk about that standard as Alabama's, that's straight out of Atkins, isn't it? It's straight out of the Alabama statute. Also straight out of Atkins, isn't it? And Hall, and Moore. Atkins? You say it's at the same standard everybody except for Oklahoma uses it. So — Oklahoma uses — All use it for a reason, because it came out of our decisions, right? Well, the reason it came out of Atkins was Atkins found that there was unanimity among the expert practitioners and associations. Fine. Whether the chicken or the egg came first, it's in Atkins. We're in violent agreement. All right.  Counsel, Mr. Waxman, I don't do this often, but Justice Gorsuch set out a form — a statement that he asked the other side whether it was a holding that they disagreed with. You read something. I did? Yes, you did. You want me to read it again? Could you please? Because I'd like Mr. Waxman — I don't remember it, so I — No, and I took it down, and I can't find my notes now. So could you please, if you do that — I would be delighted. The question is just how to understand which I struggle with, both Moore and Hall. And I read Hall as saying that you cannot treat a single score in the low 70s as decisive. And I read Moore as saying you can't use facts extraneous to IQ to outweigh a low score.  Fair with the caveat that extraneous to  Well, no. I mean, that's what the court did. If what you mean is extraneous to the question of what his true intellectual functioning is, yes.  Yeah, it started looking at things to try to outweigh a low score. It started grabbing at other facts. Well, it is — not only — I think it would be a due process violation for a court to say the evidence on the test scores is inconclusive, but I'm not going to let you — I'm not going to let either the state or the defense put on evidence. I mean, this court has a — I mean, Washington versus Texas and Crane versus Kentucky and any number of other cases basically stands for the proposition that you can't artificially limit presentation of evidence that is relevant, probative, and admissible. In Moore Counsel, the two scores were 74 and 78. And the court — and we held the state court violated Hall when it discounted the lower end of the SEM because he was, quote, lingering. There we held that when there's an IQ below 70 with the SEM that adjusted for this test standard error, then you must permit evidence of whether clinically he falls within the range of intellectual functioning details. Correct? That is a correct holding. And my understanding of the disagreement between the majority and the — and the dissent was, leaving aside the Briseno factors, whether a district judge committed clear error in determining the case the way — determining the issue the way it did. And so Justice Gorsuch's second reading is wrong. We do require clinical evidence, but the finder of fact could rightly not be persuaded by it, or it could be persuaded by it. That's your point, isn't it? That's correct unless the court concludes that I've got, you know, let's make it 70. Now, 10 IQ test scores, all of which both experts agree were properly administered and reliable. And in light of that finding, one test score of 70 — there's no — there is no evidence other than the testimony of the experts that I would — that could change my mind that he has not met prong one. But that's not the case here. I mean, we're not in the same time zone as that. No, because we have three tests, all of them — Four. Four. All of them within the stem. He could be 70 or below. He could, and he in fact demonstrated by a preponderance that he is. And in fact, Dr. King, whom they rely upon, the petitioners, testified that the scores were within intellectual disability, but then he went to other factors to say why he was — he thought he was functioning within. Well, I don't — I think Dr. King's self — the district court found his testimony to be less credible than the other experts. What he said is, we have five scores and they're all above 70. Four of them, looking at the individual standard error of measurement, are within the range. But he was asked a question by the prosecutor, are you aware of a theory by Dr. Flynn that when there are multiple test scores that are close together, the standard error of measurement will be reduced? And he said, yes, I'm aware of that. There was no testimony about what, in this case, that standard error of measurement would be. And it is inconsistent, flatly inconsistent, with what this court said in Hall and what, in at least five cases, Alabama courts have done, which is always apply plus or minus five. Thank you, counsel. They rejected Flynn, correct? I'm sorry. The district court rejected the Flynn effect in this case. Yes, we're not relying on the Flynn effect. Thank you, counsel. Thank you. Justice Thomas? Justice Alito? It would help me to get clarification of your position on a couple of issues. I thought you, I took from your brief and from your answers of an earlier point in the argument that whenever there are five 100s and one 71, the inquiry could be cut off at the point, would not have to get into any adaptive function. The inquiry could be cut off at the      point. Is that correct? I think, considering the expert testimony, if a court Expert testimony about the IQs or about other things. About the IQ test administration and meaning of the test, a court could say, look, nothing you can offer is going to convince me that, in fact, his true IQ is 70 or below. That determination would be measured for clear error. In other words, what the court would be saying is, yes, of course, each side is entitled to offer. Okay. So there could not be a categorical rule. There can never be a categorical rule that IQs plus testimony about the IQs is sufficient. And a court would err if it went beyond that and opened up the possibility of holding that there was not intellectual disability. You said the court could do it. And that would be reviewed for clear error. What I am saying is, if there are multiple, one or more IQ test scores that are within the range of intellectual disability, that is, 70 or below, it is error for a court to refuse to consider expert testimony and evidence relating to other psychometric tests and school and prior diagnoses to determine whether the defendant meets his burden to show prong one. So in just about every case, then, IQs and testimony about IQs can never be sufficient. I don't know how to — I've given you every possible answer that I have. I think a court looking at nine — you know, as many as 500s and 171, considering the testimony about how those tests were administered and what the reliable results of those tests are could conclude, look, I just — that's it for me. There's nothing you could show me that would change my mind. I'm still perplexed also about your view regarding the relevance of Alabama law here. Does it matter what Alabama law says on these points, or are we looking for a minimum Eighth Amendment standard? What Alabama law says about how this is or isn't proven is the Eighth Amendment commandment of this court in  That is, it allows states to have — to apply various standards in order to make a determination about the Eighth Amendment violation or not. As we know, the state can apply different levels of burdens consistent with the Due Process Clause. There are some states that say, you know, if somebody comes — if somebody is charged with a crime and comes in with a score of 65 even before the trial, he is presumptively ineligible. I mean, there are lots of ways in which states have established rules to enforce quote, the constitutional mandate we announce. One final question. How are we to determine what the constitutional consensus is based on state court decisions that have struggled, that are struggling to understand what this court has said in Hall and Moore? The state has cited one and only one case in which the court has expressed perplexity, and that is not even a state court. It is a federal district court applying the federal death penalty in the eastern district of New York. You can look at every single — Let me just ask it another way, and then I'll give up. Well — How are we to determine — The states are trying — the state courts are trying to apply our decisions. And would you deny the fact that that's what they're doing? They're just going off and deciding what they think is the morally appropriate way of dealing with this question, or are they trying to understand what this court has said? And if they're trying to understand what this court has said, how can that show a national consensus in the sense in which we've used that term in prior death penalty cases? The state courts have uniformly looked to Hall versus Florida, and this court's announcement of its rule in Hall — its two-part holding in Hall versus Florida and said, to determine substantially sub-average intellectual functioning, we look at all probative evidence, including, of course, the test results from properly administered IQ tests. All right. Thank you. Thank you. Is this on the order? Justice Kagan? Justice Gorsuch? Justice Jackson? Can I just quickly point out that in response to Justice Alito, he asked about whether or not there could ever be a categorical rule that scores alone are enough, are or are not. And I guess I'm just worried about the clinicians and the people who try to evaluate this condition. And they seem to be saying — I'm talking about the amethyst briefs here of the American Association on Intellectual Disabilities — that there are, quote, too many variables to consider in determining the validity of each test score and the convergence of that score with other scores and qualitative information to rationally support the use of only one procedure. They seem to be saying that you've got to look at a lot of different things in order to come to the truth of whether or not this person is actually intellectually disabled. It's not enough just as a clinical matter, as a sort of outside of the context of the case. If we're really trying to get to the bottom of this, you have to look at a lot of things. And I thought that was the thrust of the court's conclusion, that you don't cut people off just because they have a particular test score, that you allow experts to evaluate everything and the That is, in fact, what all clinicians believe. But, of course, there are clinicians who would testify — and, in fact, have testified in Alabama cases — that there was one case, I'm forgetting the name of it, where the test score was 69. It was only one test. It was 69. And the defense's expert witness testified that she did not believe that taking into account all of the other evidence, he was, in fact, intellectual. Sure. That's the point of an expert. They look at the test scores, they look at all the information, and they make this determination. So sometimes it's not helpful to have categorical rules that impinge on that assessment. I think we have to be mindful, as members of this court have frequently reminded us, that clinicians determine clinical evidence, evaluate clinical evidence, and courts apply the law. In this case, we have a law announced in Atkins that someone with this condition may not constitutionally be subject to capital punishment. There is no court that I'm aware of that has simply said there is no circumstance — well, other than Oklahoma, there is a categorical rule. When and if a court in Alabama or elsewhere is presented with an argument that there should be a categorical rule or that state law incorporates and the Eighth Amendment permits a categorical rule, that will be for the lower federal courts and perhaps this court to evaluate. Thank you. Thank you, counsel. Roboto, Mr. Overy? I had a lot of questions about Alabama law. There's no statute in Alabama. It's ex parte Perkins and it sets the line at 70. The 11th Circuit understood that at page 35 when it said Smith's claim turns on whether his IQ is 70 or below. Smith's counsel has essentially abandoned that misreading of Alabama law from their briefs because he agreed with Justice Gorsuch that the question is, is there an Eighth Amendment violation? The United States, at the bottom of page 19 of their brief, said that states can require defendants to prove his IQ scores betray deficient intellectual functioning. We agree with that. The Eighth Amendment doesn't preclude an IQ burden and 20 states, as amicus, agree with us here. Smith's counsel in the 11th Circuit said that four and five scores are in the range. Both experts, this is JA83 and JA221, use the Flynn effect and then subtracted points for the error range. Both of those are not Alabama law and they didn't consider the cumulative effect, so the court should reverse. The court should remember that this is not just about state sovereignty but also preserving the essential function of the jury to make a reasoned moral judgment about the criminal and his crime. The jury here had the very best evidence of his intelligence, his 72, the best evidence in his favor, and what's happened decades since then has only confirmed what the jury knew then, that he's not intellectually disabled. The federal courts now have made the demeaning judgment that those 12 everyday Americans rendered a sentence that was so barbarous as to be beyond the limits of civilized society. No, the court should reverse and give the lower courts no more chances instruct that the writ of habeas corpus be denied. Thank you, counsel. The case is submitted.